JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CMW INVESTMENTS LTD | CELLCO PARTNERSHIP |

**(b)** County of Residence of First Listed Plaintiff   Montgomery County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Silverang Donohoe Rosenzwig Haltzman, LLC
595 East Lancaster Ave., Suite 203, St. Davids, PA  19087

Attorneys *(If Known)*
Greenberg Traurig, LLP, 2700 Two Commerce Square, 2001 Market
Street, Philadelphia, PA  19103, (Phone) 215.988.7800

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | ☐ 820 Copyrights | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability / ☐ 368 Asbestos Personal | | | Corrupt Organizations |
| Student Loans | ☐ 340 Marine   Injury Product | **LABOR** | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability  **PERSONAL PROPERTY** | Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability / ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury / ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -   Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Medical Malpractice | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | | or Defendant) | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment  **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332

Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
05/09/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse  (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI.   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| CMW INVESTMENTS, LTD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CELLCO PARTNERSHIP | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (X)


| | | |
|---|---|---|
| May 9, 2016 | Brian T. Feeney | Defendants - Cellco Partnership |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215.988.7812 | 215.717.5265 | feeneyb@gtlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

Civil Justice Expense and Delay Reduction Plan
Section 1:03 - Assignment to a Management Track

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

SPECIAL MANAGEMENT CASE ASSIGNMENTS
(See §1.02 (e) Management Track Definitions of the
Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __150 Allendale Road, King of Prussia, Pennsylvania, 19406__

Address of Defendant: __100 Southgate Parkway, Morristown, New Jersey 07960__

Place of Accident, Incident or Transaction: __King of Prussia, Pennsylvania__
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?     Yes ☒   No ☐
   *(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))*

Does this case involve multidistrict litigation possibilities?     Yes ☐   No ☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
     (Please specify) __Breach of Contract__

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
                   Attorney-at-Law              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __May 9, 2016__   _____   __78574__
                        Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __150 Allendale Road, King of Prussia, Pennsylvania, 19406__

Address of Defendant: __100 Southgate Parkway, Morristown, New Jersey 07960__

Place of Accident, Incident or Transaction: __King of Prussia, Pennsylvania__
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?     Yes ☐   No ☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
    (Please specify) __Breach of Contract__

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
                          Attorney-at-Law                Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __May 9, 2016__   _____   __78574__
                          Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CMW INVESTMENTS LTD, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. _____ |
| | : | |
| CELLCO PARTNERSHIP, | : | |
| | : | |
| Defendant. | : | |

### NOTICE OF REMOVAL

Defendant Cellco Partnership, by its undersigned attorneys, hereby removes this action under 28 U.S.C. §§ 1332(a)(1) and 1446 from the Court of Common Pleas of Montgomery County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania. In support, Cellco Partnership states as follows:

1.     Plaintiff CMW Investments, LTD ("CMW") commenced this action on April 14, 2016, in the Court of Common Pleas of Montgomery County by filing a complaint (attached as **Exhibit A**), docketed Case No. 2016-07487.

2.     CMW served its complaint on Cellco Partnership on April 18, 2016.

3.     This Notice of Removal is timely under 28 U.S.C. § 1446(b) as it is filed within thirty (30) days of Cellco Partnership's receipt of the complaint, the initial pleading setting forth the claim for relief upon which this action is based.

4.     For purposes of diversity jurisdiction, partnerships are considered a citizen of each state in which their partners are residents. *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 195–96 (1990).

5.     As alleged in the complaint, CMW is a Pennsylvania limited partnership. (Compl. ¶ 1).

6.     Upon information and belief, CMW's sole partner is CMW Development Inc., a Pennsylvania corporation with its principal place of business in King of Prussia, Pennsylvania.

7.     As a result, CMW is a Pennsylvania resident for the purposes of diversity jurisdiction.

8.     Cellco Partnership has four partners: (a) PCS Nucleus, L.P., (b) JV PartnerCo, LLC, (c) Bell Atlantic Mobile Systems LLC, and (d) GTE Wireless Incorporated. Their citizenship is as follows:

    a.     PCS Nucleus, L.P. is a limited partnership with two partners: Verizon Holding LLC and JV PartnerCo LLC. The citizenship of limited liability companies for diversity jurisdiction purposes is determined by the citizenship of all of their members. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

        i.     Verizon Holding LLC is a limited liability company with one member: Verizon Americas, Inc., a Delaware corporation with its principal place of business in New Jersey.

        ii.     JV PartnerCo LLC is a limited liability company with one member: Verizon Americas, Inc., a Delaware corporation with its principal place of business in New Jersey.

    b.     JV PartnerCo LLC is a limited liability company with one member: Verizon Americas, Inc., a Delaware corporation with its principal place of business in New Jersey.

    c.     Bell Atlantic Mobile Systems LLC is a limited liability company with one member: MCI Communications Services, Inc., a Delaware corporation with its principal place of business in New Jersey.

d.      GTE Wireless Incorporated is a Delaware corporation with its principal place of business in New Jersey.

9.      Cellco Partnership is therefore a citizen of the Delaware and New Jersey for diversity purposes. *See* 28 U.S.C. § 1332.

10.     Pursuant to 28 U.S.C. § 1332, there is complete diversity of citizenship between CMW (a Pennsylvania citizen) and Cellco Partnership (a Delaware and New Jersey citizen).

11.     The amount-in-controversy in this matter exceeds $75,000.

12.     CMW alleges that it is owed $129,266.31, plus pre-judgment interest, post-judgment interest, attorney's fees, and costs. (*See* **Ex. A**, "WHEREFORE" clause).

13.     This civil action is therefore one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), and which may be removed to this Court by Cellco Partnership pursuant to 28 U.S.C. § 1441, because it is a civil action between citizens of different states wherein the amount in controversy exceeds $75,000, exclusive of interests and costs.

14.     Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Eastern District of Pennsylvania is the proper venue for removal because the Court of Common Pleas of Montgomery County, Pennsylvania, where the action is currently pending, is located within the Eastern District of Pennsylvania.

15.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff's counsel of record and will be promptly filed with the Prothonotary of the Court of Common Pleas of Montgomery County.

16.     Copies of all process, pleadings and orders received by Cellco Partnership are filed herewith. *See* **Exhibit A**.

17.     By filing a notice of removal in this matter, Cellco Partnership specifically reserves the right to assert any defenses and/or objections to which it may be entitled.

WHEREFORE, Cellco Partnership hereby removes this action to the United States District Court for the Eastern District of Pennsylvania.

Dated: May 9, 2016                          GREENBERG TRAURIG, LLP

/s/ Gregory T. Sturges
Brian T. Feeney
Gregory T. Sturges
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel 215.988.7812
Fax 215.717.5265
feeneyb@gtlaw.com
sturgesg@gtlaw.com

**Attorneys for Defendant Cellco Partnership**

4

## CERTIFICATE OF SERVICE

I, Gregory T. Sturges, hereby certify that on the 9th day of May 2016, I caused a true and correct copy of the foregoing Notice of Removal to be served via First Class Mail upon the following counsel of record:

>     Mark S. Haltman
>     William C. Katz
>     595 East Lancaster Ave., Suite 203
>     St. Davids, PA 19087
>     *Attorneys for Plaintiff*


>     /s/ Gregory T. Sturges
>     Gregory T. Sturges

<u>EXHIBIT A</u>

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

CMW INVESTMENTS LTD

vs.

CELLCO PARTNERSHIP

NO. 2016-07487

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

## NOTICE TO DEFEND - CIVIL

      You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

      YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

      IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

CMW INVESTMENTS LTD

vs.

CELLCO PARTNERSHIP

NO. 2016-07487

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney: MARK S HALTZMAN, Esq., ID: 38957

Self-Represented (Pro Se) Litigant ☐

Class Action Suit   ☐ Yes   [X] No

MDJ Appeal   ☐ Yes   [X] No          **Money Damages Requested** [X]

**Commencement of Action:**          **Amount in Controversy:**

Complaint          More than $50,000

## Case Type and Code

Contract:

Other

Other:     BREACH OF LEASE

SILVERANG, DONOHOE,
ROSENZWEIG & HALTZMAN, LLC
By:  Mark S. Haltzman, Esquire
      William C. Katz, Esquire
PA Atty ID Nos.  38957/205086
595 E. Lancaster Avenue, Suite 203
St. Davids, PA  19087
(610) 263-0115
mhaltzman@sanddlawyers.com
wkatz@sanddlawyers.com                                          Attorneys for Plaintiff

| | |
|---|---|
| CMW INVESTMENTS, LTD <br> 150 Allendale Road <br> King of Prussia, PA  19406 <br><br>           Plaintiff, <br><br> v. <br><br> CELLCO PARTNERSHIP <br> 100 Southgate Parkway <br> Morristown, NJ 07960, <br>           Defendant. | IN THE COURT OF COMMON PLEAS <br> MONTGOMERY COUNTY <br> CIVIL ACTION -- LAW <br><br> NO. _____ |

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

Lawyer Referral Service
Montgomery Bar Association
100 West Airy Street (REAR)
Norristown, PA 19401
(610) 279-9660, Extension 201

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

Servicio De Referencia E Informacion Legal
Montgomery Bar Association
100 West Airy Street (REAR)
Norristown, PA 19401
(610) 279-9660, Extension 201

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

**SILVERANG, DONOHOE,**
**ROSENZWEIG & HALTZMAN, LLC**
By:  Mark S. Haltzman, Esquire
      William C. Katz, Esquire
PA Atty ID Nos.  38957/205086
595 E. Lancaster Avenue, Suite 203
St. Davids, PA  19087
(610) 263-0115
mhaltzman@sanddlaywers.com
wkatz@sanddlawyers.com

      Attorneys for Plaintiff

| | |
|---|---|
| CMW INVESTMENTS, LTD<br>150 Allendale Road<br>King of Prussia, PA  19406<br><br>      Plaintiff,<br><br>    v.<br><br>CELLCO PARTNERSHIP<br>100 Southgate Parkway<br>Morristown, NJ 07960,<br><br>      Defendant. | IN THE COURT OF COMMON PLEAS<br>MONTGOMERY COUNTY<br><br>CIVIL ACTION – LAW<br><br>NO. _____ |

## COMPLAINT

### Parties

1.    Plaintiff CMW Investments, LTD (hereinafter "Landlord") is a Pennsylvania limited partnership with principal offices located at 150 Allendale Road, King of Prussia PA 19406.

2.    Defendant Cellco Partnership d/b/a Verizon Wireless (hereinafter "Tenant") is a Delaware general partnership, having its principal offices located at 100 Southgate Parkway, Morristown, NJ 07960.

{00648078;1}

**Jurisdiction and Venue**

3.     Jurisdiction over the Tenant by this Court is proper pursuant to the provisions of 42 Pa.C.S.A. § 5301 *et seq.* by virtue of the fact that the Tenant engages in continuous and systematic business in the Commonwealth of Pennsylvania.

4.     Venue in the Montgomery County Court of Common Pleas is proper pursuant to Pa.R.C.P. 1006(a)(1) and Pa.R.C.P. 2130 by virtue of the facts that Montgomery County is the location where the cause of action arose and is a county where Tenant regularly conducts business.

**Factual Background**

5.     On or about April 12, 2002, Tenant, on the one hand, and Landlord, on the other, entered into that certain written Lease (the "Lease") pursuant to which Tenant was granted the right to occupy certain premises containing approximately 4,140 square feet and located at Courtside Square Shopping Center, 140 Allendale Road, Kind of Prussia, PA (the "Premises") for the purpose of operating a Verizon Wireless branded retail store.  A true and correct copy of the Lease is attached hereto as Exhibit A.

6.     The Lease had an initial term of five (5) years.  See Exhibit A at § 1.02.

7.     The Lease was subsequently amended on four separate occasions, the most recent of which amendment, the Fourth Amendment and Extension to Lease Agreement (the "4th Amendment" and together with the Lease and each of the prior amendments, collectively the "Lease"), is dated August 31, 2011 and created an Extended Term that extended the term of the Lease through and including September 30, 2015 (the "Termination Date").  See Exhibit A at § 1.02 and Exhibit B, which is a true and correct copy of the Fourth Amendment, at ¶ 3.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

{00648078:1}

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

8.      Pursuant to Article II of the Lease, Tenant is obligated to pay monthly installments of Minimum Rent[1] and Additional Rent on or before the first day of each month. See Exhibit A at Article II.

9.      Such Additional Rent principally consists of Tenant's proportionate share of Landlord's Costs and property taxes, as called for under Section 6.02 and 9.01 of the Lease. See Exhibit A at §§ 2.02, 6.02 and 9.01.

10.     In addition, to extending the term of the Lease, the 4th Amendment adjusted the Minimum Rent due under Section 2.01(A) of the Lease to $155,250.00 per year (or $12,937.50 per month). See Exhibit A at § 2.01 and Exhibit B at ¶ 3.

11.     Pursuant to Article XX, Tenant was obligated to surrender the Premises to Landlord on the Termination date, leaving same in good condition and having removed all of Tenant's property.  See Exhibit A at Article XX.

12.     Pursuant to the very same Article XX of the Lease, if Tenant failed to so surrender the Premises in the required condition, Tenant would be deemed to have held over, at which time it would be obligated to pay Minimum Rent at the rate of 1.4 times the Minimum Rent due for the last month of the Term.  See Exhibit A at Article XX.

13.     Pursuant to Section 17.01 of the Lease, Tenant shall be in default thereunder if it fails to pay when due Minimum Rent or any other sums due under the Lease and such default continues for more than ten (10) days after notice from Landlord to Tenant. See Exhibit A at § 17.01.

14.     Pursuant to Section 25.11, any sum due under the Lease which is not paid when due shall bear interest at the rate of eleven percent (11%) per annum until paid.

---

[1] All capitalized terms used herein that are not expressly defined shall have the meanings ascribed to such term as set forth in the Lease.

{00648078;1}

Case:# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

15.     Upon Tenant's default, Landlord is permitted to terminate the Lease, and shall also be afforded the right to pursue any and all remedies permitted under applicable laws, which would include the right to bring suit to recover any sums due and owing under the Lease.  See Exhibit A at § 17.01.

16.     Further, pursuant to Section 17.04 of the Lease, Tenant is liable to Landlord for all costs incurred to enforce its rights under the Lease, including reasonable attorneys' fees.  See Exhibit A at § 17.04.

17.     Prior to the Termination Date, Tenant informed Tenant that it would not be entered into another long term renewal of the Lease as it had located an alternate space for its store.

18.     Tenant did, however, request both that Landlord agree to a several month extension of the Lease, for the specific purpose of having the continuing right to post signs at the Premises advising Tenant's customers or prospective customers of its new location even after it has ceased daily operations within the Premises.  Absent Landlord's consent, these signs would have been in violation of Section 7.03 of the Lease.  See Exhibit A at § 7.02.

19.     Landlord agreed to both requests, and Tenant posted the signs.

20.     From and after the Termination Date and continuing through the present, such signs have remained posted on the Premises as requested by Tenant and as agreed to by Landlord.

21.     Nonetheless, from and after the Termination Date, Tenant has failed to pay Minimum Rent at the rate called for under Article XX or to pay Additional Rent.

22.     As a result of Tenant's failure to timely pay all sums that were due and owing, on or about March 10, 2016, Landlord issued  notice of default, which also advised Tenant of

{00648078;1}

Landlord's election to terminate the Lease (the "Notice of Default"). A true and correct copy of the Notice of Default is Attached hereto as Exhibit C.

23. Tenant failed to cure the noticed default within the cure periods permitted under the Lease by failing to the pay Minimum Rent and Additional Rent at the then in effect rates.

24. As a result, and as set forth in the Notice of Default, Landlord deemed the Lease terminated as of March 31, 2016.

25. As a result of Tenant's default as aforesaid, the amounts due and owing and immediately payable through and including the March 31, 2016 termination date are as follows:

Unpaid Rent:

| | |
|---|---|
| Minimum Rent at Article XX rate for the period October 1, 2015 through March 31, 2016: | $108,675.00 |
| Interest on Minimum Rent: | $ 3,717.94 |
| Additional Rent for the period October 1, 2015 through March 31, 2016: | $ 16,315.20 |
| Interest on Additional Rent: | $ 558.17 |
| **Total:** | **$129,266.31** |

26. In addition, as set forth above, Tenant is liable to Landlord for all costs incurred to enforce Landlord's rights under the Lease, including reasonable attorneys' fees. See Exhibit A at § 17.04.

## COUNT I
### Breach of Contract

27. Landlord incorporates herein by reference each of the foregoing paragraphs as if set forth in full.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

{00648078;1}

28.   As noted above, Landlord and Tenant entered into and are bound by the written Lease.

29.   Tenant did not vacate the Premises on or before the Termination Date, but, instead, continued to use and occupancy the Premises.

30.   In so doing, however, Tenant failed to pay Landlord any Minimum Rent and Additional Rent as required by Article II of the Lease, let alone at the rate required by Section 20.02.

31.   As a result, on or about March 10, 2016, Landlord issued the Notice of Default.

32.   More than ten (10) days have passed since the Landlord issues the Notice to Default, but Tenant has not paid all sums which are now long since due and owing, and which failure constitutes and event of default under the Lease..

33.   The actions aforestated constitute breach of contract by the Tenant.

34.   Accordingly, the sum of **$129,266.31** is due and owing to the Landlord, plus continuing interest at the rate of 11% per annum until paid as called for under Section 25.11. See Exhibit A at § 25.11

35.   In addition, pursuant to Section 17.04 of the Lease, Landlord is entitled to reimbursement of all attorneys' fees and costs incurred in connection with the Tenant's default and this matter. See Exhibit A at § 17.04.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

{00648078;1}

WHEREFORE, Landlord demands judgment in its favor and against Tenant in the amount of $129,266.31, plus pre-judgment interest, post-judgment interest, attorneys' fees, costs, and expenses, and such other relief as this Court deems warranted and just.

SILVERANG, DONOHOE,
ROSENZWEIG & HALTZMAN, LLC

By: /s/ Mark S.Haltman
    Mark S. Haltzman, Esquire
    William C. Katz, Esquire
    595 East Lancaster Avenue, Suite 203
    St. Davids, PA  19087
    (610) 263-0115

    **Attorneys for Plaintiff**

{00648078;1}

SILVERANG, DONOHOE,
ROSENZWEIG & HALTZMAN, LLC
By: Mark S. Haltzman, Esquire
        William C. Katz, Esquire
PA Atty ID Nos.  38957/205086
595 E. Lancaster Avenue, Suite 203
St. Davids, PA  19087
(610) 263-0115
mhaltzman@sanddlawyers.com
wkatz@sanddlawyers.com                                    **Attorneys for Plaintiff**

---

CMW INVESTMENTS, LTD                  :        IN THE COURT OF COMMON PLEAS
150 Allendale Road                    :        MONTGOMERY COUNTY
King of Prussia, PA  19406            :        CIVIL ACTION – LAW
                                      :
                         Plaintiff,   :        NO. _____
                                      :
            v.                        :
                                      :
CELLCO PARTNERSHIP                    :
715 W Dekalb Pike                     :
King of Prussia, PA 19406,            :
                                      :
                         Defendant.   :

---

## VERIFICATION OF COMPLAINT

        I, Michael J. Willner, being duly sworn according to law, hereby depose and say that I am the authorized representative of the Plaintiff in this action. The facts set forth in the foregoing document and the documents attached thereto, if any, as an Exhibit, are true and correct to the best of my knowledge, information and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. Section 4908 relating to unsworn falsification to authorities.

                                   _____
                                   Michael J. Willner

{00648078;1}

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

# E X H I B I T

## "A"

# EXHIBIT "A"

{00467564;1}

**COURTSIDE SQUARE SHOPPING CENTER**
**140 ALLENDALE ROAD**
**KING OF PRUSSIA, PENNSYLVANIA**

LEASE

TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| I | Grant and Term | 1 |
| II | Rent | 2 |
| III | Tenant's Work; Delivery of the Leased Premises | 2 |
| IV | ADA Compliance | 3 |
| V | Conduct of Business by Tenant | 4 |
| VI | Operation and Maintenance of Common Areas | 5 |
| VII | Alterations and Signs | 8 |
| VIII | Maintenance of Leased Premises | 10 |
| IX | Taxes, Insurance and Indemnity | 11 |
| X | Utility Charges | 14 |
| XI | Estoppel Letter, Attornment and Subordination | 14 |
| XII | Assignment and Subletting | 15 |
| XIII | Waste | 15 |
| XIV | Service Area | 16 |
| XV | Destruction of Leased Premises | 16 |
| XVI | Eminent Domain | 17 |
| XVII | Default by Tenant | 17 |
| XVIII | Access by Landlord | 19 |
| XIX | Tenant's Property | 19 |
| XX | Holding Over and Surrender of Leased Premises | 20 |
| XXI | Rules and Regulations | 21 |
| XXII | Quiet Enjoyment | 21 |
| XXIII | Renewal Options | 21 |
| XXIV | Environmental Matters | 22 |
| XXV | Miscellaneous | 23 |

EXHIBITS

"A"    Space Plan
"B"    Initial Improvements
"C"    Tenant's Building Sign
"D"    Shopping Center Pylon
"E"    Form of Subordination, Non-Disturbance and Attornment Agreement

H:\vc\Willner\pler1\docs\leaseverizon031102.doc

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

LEASE

THIS LEASE is made as of this /2th day of March, 2002 by and between CMW INVESTMENTS, LTD., a Pennsylvania limited partnership, with an address at 150 Allendale Road, King of Prussia, PA 19406 ("Landlord"), and CELLCO PARTNERSHIP (d/b/a Verizon Wireless, a Delaware partnership, with an address at 100 Southgate Parkway, Morristown, NJ 07960 ("Tenant").

## ARTICLE I - GRANT AND TERM

Section 1.01   Leased Premises.

A.   Landlord, in consideration of the rent to be paid and the covenants to be performed by Tenant, does hereby demise and lease unto Tenant, and Tenant hereby rents from Landlord, those certain premises (the "Leased Premises") identified on the space plan attached hereto as Exhibit A (the "Space Plan"), which will contain approximately 4,140 square feet of space.

B.   The exterior walls and roof and the area beneath the Leased Premises are not demised hereunder and the use thereof, together with the right to install, maintain, use, repair and replace pipes, ducts, conduits, wires and structural and mechanical elements leading through the Leased Premises are hereby reserved unto Landlord; provided, that Landlord shall neither unreasonably interfere with Tenant's business, access, visibility and operations nor reduce the size of the Leased Premises.

C.   Tenant acknowledges that the Leased Premises have been examined by Tenant, or Tenant has been afforded the right to do so, and, except as expressly herein otherwise provided, Tenant accepts them in the condition or state in which they are to be delivered to Tenant, without relying on any representation, covenant or warranty, express or implied by Landlord or any agent of Landlord, except as herein expressly provided. The "Shopping Center" consists of the retail property commonly known as 140 Allendale Road, King of Prussia, Pennsylvania, as shown on the Space Plan. Landlord represents that there are no known structural defects at the Leased Premises or the building in which the Leased Premises are located and that the mechanical, plumbing, electrical, HVAC and other building systems serving the Leased Premises are in good operating condition and repair.

Section 1.02   Commencement and Ending Day of Term; Rent Commencement Date.

A.   The term of this Lease shall commence (the "Commencement Date") on the date this Lease is fully executed, at which time Landlord shall deliver possession of the Leased Premises to Tenant. Tenant's obligation to pay Minimum Rent and all other charges required hereunder, other than utility charges, which shall be payable by Tenant for periods from and after the Commencement Date, shall commence (the "Rent Commencement Date") on the earlier of: (a) April 1, 2002 or (b) the date on which Tenant shall open the Leased Premises for business to the general public.

B.      Subject to Article XXIII, the term of this Lease shall expire five (5) years from and after the Rent Commencement Date, unless sooner terminated as hereinafter provided; provided, that if the term commences on a day other than the first day of a month, then the term shall be extended for the remaining fractional month in which the Rent Commencement Date occurs.

Section 1.03   Building Permit Contingency.   Promptly after the execution of this Lease, Tenant shall cause to be prepared in compliance with all applicable laws, regulations and building codes, such plans and specifications as shall be required by the Pennsylvania Department of Labor and Industry and/or Upper Merion Township in order to obtain a building permit for the Initial Improvements (as hereinafter defined) (the "Building Permit Plans"). Tenant shall promptly file the Building Permit Plans with Upper Merion Township and the Pennsylvania Department of Labor and Industry, all required filing and permitting fees shall be paid by Tenant, and Tenant shall prosecute the issuance of all necessary building permits for construction of the Initial Improvements (collectively, the "Building Permits") diligently and in good faith. If, however, the Building Permits are not issued to Tenant within three months after the date of this Lease, Tenant may, by notice to Landlord given within a period of 15 days after the end of such three-month period, terminate this Lease effective as of the date of such notice, failing which Tenant's rights under this Section 1.03 shall be deemed waived by Tenant. Upon obtaining the Building Permits, Tenant shall promptly send Landlord copies thereof.

## ARTICLE II - RENT

Section 2.01   Minimum Rent.

A.      The fixed minimum annual rental ("Minimum Rent") during the initial 5-year term of this Lease is $124,200.00/annum ($10,350.00/month). Minimum Rent shall be payable by Tenant in equal consecutive monthly installments on or before the first day of each month, in advance, at the office of Landlord or such other place as Landlord may designate, without any prior demand therefor and without any deduction or set-offs whatsoever, except as otherwise herein expressly provided. In addition to the Minimum Rent, Tenant shall pay to Landlord all sales or commercial rental tax now or hereafter levied by any governmental body having jurisdiction over the Leased Premises.

B.      Should the Rent Commencement Date be other than the first day of a calendar month, then the Minimum Rent for the first fractional month of the term shall be prorated upon a daily basis based upon a thirty (30) day calendar month.

Section 2.02   Additional Rent.   Tenant shall pay any and all sums of money or charges required to be paid by Tenant under this Lease promptly when the same are due, without any deductions or set-offs whatsoever, except as otherwise herein expressly provided. All such amounts or charges shall be payable to Landlord at the place where the Minimum Rent is payable and shall be deemed to be additional rent hereunder.

## ARTICLE III - TENANT'S WORK; DELIVERY OF THE LEASED PREMISES

Section 3.01   Tenant's Work.   From and after the Commencement Date, Tenant shall diligently proceed to construct its initial improvements to the Leased Premises in accordance with

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Exhibit B attached hereto (the "Initial Improvements") and shall install its trade fixtures and inventory. Tenant's activities shall be conducted so as not to unreasonably interfere with other tenants of the Shopping Center. Tenant shall, at its expense, remove from the Leased Premises and from the Shopping Center, all trash which may accumulate in connection with Tenant's activities. During such period, Tenant shall perform all duties and obligations imposed by this Lease, including, without limitation, those provisions relating to utilities, insurance and indemnification, saving and excepting only the obligation to pay rent (other than any additional rent arising out of any failure of Tenant to perform its obligations under this Lease), which obligation shall commence on the Rent Commencement Date.

Section 3.02   Mechanic's Liens. No work which Landlord permits Tenant to do pursuant to this Lease, whether in the nature of erection, construction, alteration or repair, shall be deemed to be for the immediate use and benefit of Landlord so that no mechanic's or other lien shall be allowed against the estate of Landlord by reason of any consent given by Landlord to Tenant to improve the Leased Premises. In the event any mechanic's or other lien shall at any time be filed against the Leased Premises or the Shopping Center by reason of work, labor, services or materials performed or furnished, or alleged to be performed or furnished, to Tenant or to anyone holding the Leased Premises through or under Tenant, and Tenant shall fail to cause such lien to be discharged or bonded within twenty (20) days after being notified of the filing thereof, then, in addition to any other right or remedy of Landlord, Landlord may discharge the same by paying the amount claimed to be due, and the amount so paid by Landlord including reasonable attorney's fees incurred by Landlord in procuring the discharge of such lien, together with interest thereon at the rate of 11% per annum, shall be due and payable by Tenant to Landlord.

Section 3.03   Tenant's Trade Fixtures. All trade fixtures (as distinguished from leasehold improvements) and inventory owned by Tenant and installed in the Leased Premises shall remain the property of Tenant and shall be removable at any time, including upon the expiration of the term; provided, that Tenant shall repair any damage to the Leased Premises caused by the removal of said trade fixtures and inventory.

Section 3.04   Changes and Additions to Shopping Center. Landlord reserves the right at any time to make additions or alterations to and to build additional stores in the building of which the Leased Premises may be a part and to build adjoining the same. Landlord also reserves the right from time to time to construct other buildings or improvements in the Shopping Center, to make alterations thereof or additions thereto, to build additional stories in any building or buildings in the Shopping Center, to build adjoining the same or to construct double-deck or elevated parking facilities, or to acquire additional property or properties which Landlord, at Landlord's sole election, may include within the Shopping Center as common areas (as hereinafter defined) or otherwise. In the exercise of its rights under this Section 3.04, however, Landlord shall neither unreasonably interfere with Tenant's business, access, visibility and operations nor reduce the size of the Leased Premises.

## ARTICLE IV - ADA COMPLIANCE

Section 4.01   ADA. Landlord covenants that as of the Commencement Date, the Leased Premises and the Shopping Center shall comply with all applicable provisions of the Americans

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

With Disabilities Act of 1990 (the "Act"), and that from and after the Commencement Date, Landlord shall be responsible for compliance with the Act as it relates to the Shopping Center generally, and Tenant shall be responsible for compliance with the Act as it relates to the Leased Premises specifically, including Tenant's Permitted Use (as hereinafter defined) thereof. Within ten (10) days after receipt, Landlord and Tenant shall each advise the other party in writing, and provide the other with copies of (as applicable): any notices alleging violation of the Act relating to any portion of the Leased Premises; any claims made or threatened in writing regarding noncompliance with the Act and relating to any portion of the Leased Premises; or any governmental or regulatory actions or investigations instituted or threatened regarding noncompliance with the Act and relating to any portion of the Leased Premises.

## ARTICLE V - CONDUCT OF BUSINESS BY TENANT

Section 5.01    Use of Premises.  Tenant shall use and occupy the Leased Premises during the term of this Lease solely for the purpose of conducting the business of the retail sale, service and installation of car phones, and other uses incidental to the selling, leasing, servicing, installing, maintaining and repairing of personal, wireless, cellular and mobile telecommunications systems, equipment and related products, accessories, peripherals, parts and service (the "Permitted Use"), and for no other purpose or purposes without the prior consent of Landlord. Landlord hereby grants Tenant the exclusive right to use the Leased Premises for the Permitted Use as a primary use, and Landlord and its affiliates shall not, directly or indirectly, (a) enter into any agreement with any third party, which would give or permit any third party the right to conduct or permit the conduct of any business within the Shopping Center, which is the same, or substantially the same, as the Permitted Use, or (b) otherwise permit the use during the term hereof of any premises owned, managed or controlled by Landlord or its affiliates, for the conduct of a business, by any third party, within the Shopping Center which is the same, or substantially the same, in whole or in part, as the Permitted Use.

Section 5.02    Operation of Business.  Tenant agrees to operate in the entire Leased Premises during the entire term of this Lease, unless prevented from doing so because of fire, accident, or acts of God, and to conduct its business at all times in a high class and reputable manner. Tenant shall install and maintain at all times a display of merchandise in the display windows of the Leased Premises and shall keep the same well lighted during all Shopping Center business hours. Tenant shall promptly comply with all laws and ordinances and lawful orders and regulations affecting the Leased Premises and the cleanliness, safety, occupancy and use of same. No auction, liquidation, going out of business, fire or bankruptcy sales may be conducted in the Leased Premises without the prior consent of Landlord. Tenant agrees that it will conduct its business in the Leased Premises in a lawful manner and in good faith, and will not do any act tending to injure the reputation of the Shopping Center or the name or logo of the Shopping Center in its advertising.

Section 5.03    Care of Premises.  Tenant shall keep the Leased Premises (including the show windows and signs) orderly, neat, safe and clean and free from rubbish and dirt at all times and arrange for the regular pick up of all trash and garbage at any time generated at or from Leased Premises. If Landlord shall provide any services or facilities for such pick up, then Tenant shall be obligated to use the same, if competitively priced, and shall pay a proportionate share of the actual cost thereof within thirty (30) days after being billed therefor.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

## ARTICLE VI - OPERATION AND MAINTENANCE OF COMMON AREAS

Section 6.01    <u>Operation of Common Areas</u>.  Landlord agrees to cause to be operated, managed and maintained during the term of this Lease all parking areas, driveways, sidewalks, landscaping, and common area signage and lighting facilities in the Shopping Center. The manner in which such areas and facilities shall be maintained and operated and the expenditures therefor shall be at the sole discretion and under the absolute control of Landlord and the use of such areas and facilities shall be subject to such reasonable rules and regulations as Landlord shall make from time to time.  Landlord shall give Tenant at least thirty (30) days prior notice of the effective date of any new rules or regulations.  All such rules and regulations shall be uniformly applied as to all tenants within the Shopping Center.

Section 6.02    <u>Tenant's Proportionate Share of Common Area Expenses</u>.

A.       Tenant agrees to pay Landlord, as additional rent, in the manner and on the dates hereinafter provided, Tenant's Proportionate Share (as hereinafter defined) of all costs and expenses of every kind and nature paid or incurred by Landlord in operating, equipping, insuring, policing and protecting, lighting, repairing and maintaining the common areas and all other areas, facilities and buildings used in the maintenance and operation of the Shopping Center, including the Leased Premises.   Such costs and expenses shall include, but not be limited to:   illumination and maintenance of Shopping Center signs; cleaning, lighting, line painting and landscaping; snow and ice removal; costs of personnel associated with repair, maintenance and operation of the Shopping Center; supplies, monthly termite and pest extermination services of leased premises and common areas; sanitary control, trash, garbage and other refuse removal; heating, ventilating, air conditioning, and sprinkler system; the costs of all types of insurance coverages carried by Landlord, including, without limitation public liability, personal and bodily injury and property damage liability and automobile coverage, rent insurance, fire and extended coverage, vandalism and malicious mischief and all broad form coverages, sign insurance and any other insurance that may reasonably be carried by Landlord covering the Shopping Center all in limits and with deductibles reasonably selected by Landlord; maintenance and repair of septic tanks and drain fields, if any, and other utility lines, pipes and conduits; and management services directly relating to the operation of the Shopping Center (at the rate of 4% of rentals) (collectively, "<u>Costs</u>").  Costs shall not include:

　　　　　　1.       special cleaning or other services not offered to all tenants of the Shopping Center;

　　　　　　2.       any charge for depreciation, interest, leasehold amortization or rents (including ground rents) and non-cash items paid, booked or incurred by Landlord;

　　　　　　3.       leasing commissions, cost of legal and other professional fees incurred in preparing, negotiating and executing leases or in resolving disputes with leases;

　　　　　　4.       costs, including permit, license and inspection fees incurred in renovating, improving, decorating, painting, or redecorating vacant space or space of other Shopping Center tenants;

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

5.    costs incurred solely because of violations of laws by Landlord or other Shopping Center tenants;

6.    items and services for which Tenant reimburses Landlord or pays third parties or that Landlord provides selectively to one or more tenants in the Shopping Center, other than Tenant, without reimbursement therefor;

7.    advertising and promotional expenditures;

8.    repairs or other work needed because of fire, windstorm or other casualty (except casualty caused in whole or in part by Tenant) or other cause insured against or required to be insured against by Landlord pursuant to the casualty and insurance provisions of this Lease;

9.    any costs, fines or penalties incurred because Landlord violated any governmental law, statute or ordinance;

10.    costs incurred by Landlord to voluntarily test, survey, cleanup, contain, abate, remove, or otherwise remedy any currently classified hazardous wastes or asbestos containing materials from the Shopping Center, unless the wastes or asbestos containing materials were in, on, or around the Shopping Center because of Tenant;

11.    other expenses which under generally accepted accounting principles, consistently applied, would not be considered normal maintenance, repair, management or operating expenses;

12.    costs incurred in complying with the Americans With Disabilities Act and regulations governing the use of chlorofluorocarbons and related ozone depleting chemicals, except to the extent that Landlord replaces existing equipment upon the end of such equipment's useful life;

13.    compensation paid to clerks, attendants or other persons in commercial concessions (such as in a parking garage) operated by Landlord, which costs are otherwise covered by fees;

14.    taxes due as a result of or in connection with the sale of the Shopping Center;

15.    Taxes;

16.    ground rent and mortgage interest;

17.    costs of electrical energy furnished and metered directly to tenants of the Shopping Center;

18.    cost of Tenant installations and decorating expenses incurred in connection with preparing space for a new tenant;

19.    executive salaries, expenses, fringe benefits and other compensation, except to the extent reasonable and directly allocable to the operation of the Shopping Center;

20.    franchise or income taxes imposed upon Landlord;

21.    costs of any special work or services performed by or at the request of any tenant (including, without limitation, costs of alterations and repairs);

22.    costs incurred by Landlord, including legal and other professional fees, as a result of a breach by any tenant or Landlord of its lease obligations;

23.    increased insurance premiums caused by acts of other tenants;

24.    costs of a capital nature;

25.    costs incurred by the negligence or willful misconduct of Landlord;

26.    costs or expenses which are covered by insurance or by any manufacturer warranty;

27.    cost and expenses attributable to construction (including correcting initial construction defects), development, leasing or start-up expenses;

28.    financing and debt service fees;

29.    costs of repair or replacement incurred by fire or other casualty or caused by the right of eminent domain;

30.    any item of cost which Tenant is required to pay pursuant to any other provision of the lease;

31.    costs of any amenity, business or activity that generates separate income or from which Landlord obtains income (e.g. parking lots);

32.    costs of management fees to the extent the calculation thereof is based on taxes, insurance or depreciation.

B.    Tenant's "Proportionate Share" means a percentage computed by multiplying the Costs by a fraction, the numerator of which shall be the number of square feet of leasable floor area in the Leased Premises and the denominator of which shall be the number of square feet of leasable floor area in the Shopping Center. Initially, Tenant's Proportionate Share shall be 16.56%. Landlord estimates that Tenant's Proportionate Share of Costs shall be $1,052.25 per month for the initial year of the term of this Lease.

C.    Tenant's Proportionate Share of Costs shall be paid by Tenant in monthly installments in such amounts as are reasonably estimated and billed by Landlord at the beginning of each calendar year, each installment being due on the first day of each month. Within one hundred twenty (120) days or such other reasonable time, after the end of each calendar year, Landlord shall deliver to Tenant a statement of Landlord's actual operating costs for such calendar year and Landlord or

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Tenant shall, within thirty (30) days after delivery of such statement, pay to the other any overpayment or underpayment, as the case may be. Failure of Landlord to provide the statement called for hereunder within the time prescribed shall not relieve Tenant of its obligations hereunder.

D.      Landlord is to make no profit on Costs, it being the intent hereof that Landlord is simply to be reimbursed for actual Costs.

E.      Tenant shall have the right at all reasonable times upon reasonable prior notice within sixty (60) days after Landlord has provided Tenant with a statement of the actual Costs, and at its sole expense, to audit Landlord's books and records relating to this Lease for the calendar year covered by the statement. Should such an audit disclose an overcharge to Tenant, Landlord shall reimburse the amount thereof to Tenant promptly. Should such overcharge exceed 4% of what Tenant was finally billed on account of Costs for such calendar year, as specified in Landlord's statement, Landlord shall pay the reasonable cost of such audit, upon being billed therefor by Tenant.

Section 6.03   Use of Common Areas.  The term "common area", as used in the Lease, shall mean the parking areas, roadways, pedestrian sidewalks, truckways, loading docks, delivery areas, landscaped areas, public bathrooms and comfort stations, and all other areas or improvements which may be provided by the Landlord for the convenience and use of all tenants of the Shopping Center, and their respective sub-tenants, agents, employees, customers, invitees and any other licensees of Landlord.  The use and occupancy by Tenant of the Leased Premises shall include the use, in common with all others to whom Landlord has granted or may hereafter grant rights to use the same, of the common areas located within the Shopping Center, and of such other facilities as may be designated from time to time, subject, however, to reasonable rules and regulations for the use thereof as prescribed from time to time by the Landlord. Landlord may include the parking areas, roadways, and landscaped areas located on property adjacent and contiguous to the Shopping Center in the common areas.   Tenant and its employees shall park their cars only in areas within a reasonable walking distance from the Leased Premises specifically designated from time to time by Landlord for that purpose.  Automobile license numbers of employees' cars shall be furnished to Landlord upon Landlord's request. Landlord may at any time close temporarily any common area to make repairs or changes, to prevent the acquisition of public rights in such area or to discourage non-customer parking; and may do such other acts in and to the common areas as in its reasonable judgment may be desirable to improve the convenience thereof; provided, that Landlord shall neither unreasonably interfere with Tenant's business, access, visibility and operations nor reduce the size of the Leased Premises.

## ARTICLE VII - ALTERATIONS AND SIGNS

Section 7.01   Installation by Tenant.   Tenant shall not make or cause to be made any structural alterations, additions or improvements to the Leased Premises, or install or cause to be installed any exterior signs, canopies or awnings or make any changes to the store front, without the prior approval of Landlord, which shall not be unreasonably withheld, conditioned or delayed. Any alterations requiring roof penetration shall be made under the supervision of Landlord's roofing contractor and otherwise in such a manner which will not impair Landlord's roof warranty. Tenant shall present to Landlord plans and specifications for such work requiring Landlord's approval under

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

this Section 7.01 at the time approval is sought.  Subject to the terms and conditions of this Lease, Tenant may place an antenna and an 18 inch satellite dish on the exterior of the Leased Premises at a location reasonably acceptable to Landlord.  In addition, Tenant shall have the right to install and maintain throughout the term hereof up to four (4) small antennae not exceeding fifty-three (53) inches in height each in the Leased Premises, the ceiling of the Leased Premises, or on the roof of the building in which the Demised Premises are located, and a minicell in the Leased Premises. Such antennae and minicell shall be installed by Tenant in accordance with all applicable building codes, and if visible from outside the Leased Premises, shall be placed in a location acceptable to Landlord in its reasonable discretion.  Tenant shall maintain said antennae and minicell in a good state of repair and shall protect, defend, indemnify, save and hold harmless Landlord from and against any and all claims, losses, costs, damages and expenses, including attorney's fees, resulting from the installation, maintenance, existence or removal of such antennae and minicell, except those resulting from Landlord's negligence or willful misconduct.  Upon vacating the Leased Premises, Tenant shall remove such antennae and minicell and repair all damage caused by such removal. Tenant's obligation to observe or perform this covenant shall survive the expiration or termination of this Lease.

Section 7.02   Removal by Tenant.  All alterations, decorations, additions and improvements made by Tenant (but not Tenant's trade fixtures and inventory) shall be deemed to have attached to the Leased Premises and to have become the property of Landlord upon such attachment, and upon the expiration or earlier termination of this Lease, Tenant shall not remove any such alterations, decorations, additions and improvements, except that trade fixtures installed by Tenant may be removed by Tenant at any time; provided, that Landlord may designate by notice to Tenant given prior to their installation those alterations and additions which shall be restored or removed by Tenant at the expiration or termination of this Lease and Tenant shall promptly remove the same and repair any damage to the Leased Premises caused by such removal.

Section 7.03   Tenant's Signs.  Tenant will not place or cause to be placed or maintained any sign or advertising matter of any kind anywhere within the Shopping Center, except in locations in the interior of the Leased Premises which are not visible from outside the Leased Premises, without the prior approval of Landlord.  Tenant may place a building facade sign, and may make changes thereto from time to time, consistent with Tenant's uniform national, area-wide or regional signage on the exterior of the Leased Premises in the location formerly occupied by "Sprint PCS", as shown on Exhibit C attached hereto.  Landlord hereby approves the sign design attached as Exhibit C-1. No symbol, design, name, mark or insignia adopted by the Landlord for the Shopping Center shall be used without the prior consent of Landlord.  All signs located in the interior of any store shall be in good taste so as not to detract from the general appearance of the store and the Shopping Center. Tenant further agrees to maintain, in good condition and repair at all times, any such sign or advertising matter of any kind used by Tenant.  All of Tenant's signs shall comply with all applicable governmental requirements.

Section 7.04   Shopping Center Pylon.  Tenant shall be entitled, at Tenant's expense, to place a sign panel on the Shopping Center pylon sign, as shown on Exhibit D attached hereto, in the slot formerly occupied by "Sprint PCS".

Section 7.05   Construction Requirements.

A.      Tenant shall not, in the course of any work, interfere with, hamper, or cause any inconvenience to the use and occupation or the ingress and egress to, in, or from the Shopping Center.

B.      Landlord shall have the right to inspect Tenant's construction work from time to time at Landlord's discretion upon reasonable prior notice to Tenant and, if Tenant so requires, accompanied by a representative of Tenant.

C.      Landlord shall have no responsibility or liability for the adequacy of Tenant's plans and specifications or for the performance of Tenant's work or for the payment of the costs and expenses incurred by Tenant in connection therewith.

D.      Prior to commencement of construction, Tenant shall procure and maintain in effect a full coverage all risk policy of casualty insurance insuring the Leased Premises and Tenant's work for the full insurable value thereof with general liability coverage of not less than $3,000,000.00. Such policy shall name Landlord as an additional insured.

E.      All contractors and subcontractors shall procure and maintain liability insurance in the amount of $1 million and workmen's compensation insurance with statutory limits during the period of construction. Tenant shall deliver to Landlord certificates of insurance evidencing such coverage prior to the commencement of construction by each such contractor or subcontractor. Such certificates shall name Landlord, Landlord's mortgagees of which Tenant has been specifically notified, as applicable, and Tenant as additional insureds.

F.      All work performed by Tenant shall be completed in a good and workmanlike manner and in accordance with all applicable governmental laws, permits and regulations.

ARTICLE VIII - MAINTENANCE OF LEASED PREMISES

Section 8.01   Landlord's Obligations for Maintenance.  Landlord shall keep and maintain the foundation, structure and roof of the building in which the Leased Premises are located, those portions of any of the building mechanical, plumbing, electrical and HVAC systems not exclusively serving the Leased Premises and the structural portions of the Leased Premises which were installed by Landlord, exclusive of doors, door frames, door checks, windows, and exclusive of window frames located in exterior building walls, in good repair, except that Landlord shall not be called upon to make such repairs occasioned by the act or negligence of Tenant, its agents, employees, invitees, licensees or contractors, except to the extent that Landlord is reimbursed therefor under any policy of insurance permitting waiver of subrogation in advance of loss. Landlord shall not be called upon to make any other improvements or repairs of any kind upon said premises and appurtenances.

Section 8.02   Tenant's Obligations for Maintenance.

A.      Subject to Section 8.01, Tenant shall keep and maintain in good order, condition and repair (including replacement of parts and equipment if necessary) the Leased Premises and every

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

part thereof and any and all appurtenances thereto wherever located, including, but without limitation to, the exterior and interior portion of all doors, door checks, windows, plate glass, store front, all plumbing and sewage facilities exclusively serving the Leased Premises, including free flow up to the main sewer line, fixtures, heating, ventilation and air conditioning and electrical systems, (whether or not located in the Leased Premises) exclusively serving the Leased Premises, sprinkler system, walls, floors and ceilings. Tenant shall engage a reputable licensed HVAC service contractor to periodically inspect, service and maintain the HVAC system serving the Leased Premises.

     B.    Tenant shall keep and maintain the Leased Premises in a clean, sanitary and safe condition in accordance with applicable laws and all directions, rules and regulations of the health officer, fire marshall, building inspector, or other proper officials of the governmental agencies having jurisdiction, at the sole cost and expense of Tenant, and Tenant shall comply with all requirements of law, ordinance or otherwise, affecting Tenant's use of, and/or improvements to, the Leased Premises. If Tenant refuses or neglects to commence and to complete repairs promptly and adequately, Landlord may, at its option, upon fifteen (15) days prior notice to Tenant (except in an emergency), make and complete said repairs and Tenant shall pay the cost thereof to Landlord upon demand, together with interest thereon at the rate of 11% per annum. At the expiration or earlier termination of this Lease, Tenant shall surrender the Leased Premises in good condition, reasonable wear and tear, loss by fire or other unavoidable casualty excepted.

     C.    Prior to commencing any work at the Leased Premises, Tenant shall record a lien waiver from each contractor in the county in which the Shopping Center is located.

     D.    Tenant, at its own expense, shall install and maintain fire extinguishers and other fire protection devices as may be required from time to time by any governmental body having jurisdiction over the Leased Premises and the insurance underwriters insuring the building in which the Leased Premises are located.

### ARTICLE IX - TAXES, INSURANCE AND INDEMNITY

Section 9.01   Tenant's Tax Obligation.

     A.    Tenant shall be liable for, and shall pay, all taxes levied against personal property and trade fixtures placed by Tenant in the Leased Premises, including without limitation, shelves, counters, vaults, wall safes, fixtures, machinery, and equipment. If any such taxes are levied against Landlord or Landlord's property, and if Landlord pays same, or if the assessed value of the Shopping Center is increased solely and directly by the inclusion therein of the value placed on such property, and the Landlord makes payment, based on such increased assessment, Tenant shall repay to Landlord the taxes so paid by Landlord or the proportion of such resulting from such increase in assessment, within thirty (30) days after request, with interest on any payments more than thirty (30) days past due at the rate of 11% per annum.

     B.    Tenant shall pay its Proportionate Share of all ad valorem and real estate taxes levied or assessed by any lawful authority against all of the land, buildings and all other improvements and betterments which now or hereafter become a part of the Shopping Center (collectively "Taxes")

with respect to the term hereof. Nothing herein contained shall be construed to include within the term "Taxes" any inheritance, estate, succession, transfer, gift, franchise, corporation, revenues, receipts, profits, partnership or income taxes that are or may be imposed upon Landlord; provided, that if at any time prior to or during the term the methods of taxation prevailing at the date of this Lease shall be altered so that in addition to, in lieu of or as a substitute for, the whole or any part of the Taxes now levied, assessed or imposed on real estate as such there shall be levied, assessed or imposed (i) a tax on or measured by the rentals received from such real estate, or (ii) a tax or license fee imposed upon Landlord which is otherwise measured by or based in whole or in part upon the Shopping Center, any portion thereof or the value thereof, then the same shall be included in the computation of Taxes, but only in such amounts as would be payable by Landlord if the Shopping Center were the only property of Landlord subject to such taxes or fees. Landlord shall reasonably estimate the Taxes annually and Tenant shall pay one-twelfth (1/12) of its Proportionate Share thereof monthly in advance, together with its payments of Minimum Rent. After the end of each calendar year, Landlord shall furnish Tenant a statement of the actual Taxes, and there shall be an adjustment between Landlord and Tenant, with payment to or repayment by Landlord, as the case may require, to the end that Landlord shall receive the entire amount of Tenant's Proportionate Share of Taxes for such period, or at Landlord's option, any overpayment by Tenant shall be credited on account of the next succeeding payment(s) by Tenant of such Taxes, except to the extent that sufficient succeeding payment(s) do not remain to fully utilize the credit, whereupon the excess amount shall be refunded to Tenant. Landlord estimates that Tenant's Proportionate Share of Taxes shall be $434.70 per month for the initial year of the term of this Lease.

      C.      Should any governmental authority require that a tax, other than the Taxes, be paid by Tenant but collected by Landlord, for and on behalf of such governmental authority, and from time to time forwarded by Landlord to said governmental authority, the same shall be paid by Tenant to Landlord, and be collectible by Landlord, and the payment thereof enforced in the same manner as is provided for the enforcement of payment of rents hereunder, and the same shall be payable monthly.

      D.      Landlord shall have the absolute and unrestricted right, but not the obligation, to contest the validity or amount of any Taxes by appropriate proceedings. If Landlord shall institute any such contest, it shall have the sole, absolute and unrestricted right to settle any such contest, proceeding or action upon whatever terms Landlord may, in its sole discretion, determine. If Landlord shall receive any refund of such Taxes, Landlord shall credit such proportion of such refund as shall be allocable to the payments of Taxes actually made by Tenant (less all costs, expenses and attorney's fees incurred in connection with such contest) against the next succeeding payment(s) of Taxes due from Tenant, except to the extent that sufficient succeeding payment(s) do not remain to fully utilize the credit, whereupon the excess amount shall be refunded to Tenant.

      Section 9.02  <u>Liability Insurance</u>. Tenant shall, during the term hereof, keep in full force and effect, a policy of public liability and property damage insurance with respect to the Leased Premises and the business operated by Tenant and any subtenants of Tenant in the Leased Premises, in which the limits of public liability shall be not less than $3,000,000.00 combined single limit. The policy shall name Landlord, any other parties in interest designated by Landlord in a notice to Tenant, as additional insured, and shall contain a clause that the insurer will not cancel or change the insurance without first giving Landlord thirty (30) days prior written notice. Such insurance may be furnished by Tenant under any blanket policy carried by it or under a separate policy thereof. The insurance

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

shall be with an insurance company licensed to do business in Pennsylvania and having a minimum rating of A-/VII and a certificate of insurer certifying to the issuance of such policy shall be delivered to Landlord prior to entrance by Tenant upon the Leased Premises and, respecting renewals, not less than ten (10) days prior to the expiration of the current policy.

Section 9.03   Other Insurance.

A.      Tenant shall carry, at its expense, insurance against fire, vandalism, malicious mischief, and such other perils as are from time to time included in a standard extended coverage endorsement, insuring Tenant's merchandise, trade fixtures, furnishings, equipment and all other items of personal property of Tenant located on or within the Leased Premises, in an amount equal to not less than eighty percent (80%) of the actual replacement cost thereof and shall furnish Landlord with a certificate evidencing such coverage.

B.      Tenant shall not carry any stock or goods, or do anything in or about the Leased Premises, which will in any way tend to increase the insurance rates on the Leased Premises and/or the building of which they are a part.  If Tenant installs any electrical equipment that overloads the lines in the Leased Premises, Tenant shall, at its own expense, make whatever changes are necessary to comply with the requirements of the insurance underwriters and governmental authorities having jurisdiction.

Section 9.04   Covenant to Hold Harmless.  Tenant shall indemnify and save Landlord harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrences in, upon or at the Leased Premises, other than that resulting from the negligence or intentional misconduct of Landlord, its agents, contractors or employees.  In case Landlord shall, without fault on its part, be made a party to any litigation commenced by or against Tenant, Tenant shall protect and hold harmless and shall pay all costs, expenses and reasonable attorney fees incurred or paid by Landlord in connection with such litigation.

Section 9.05   Landlord's Insurance and Indemnification.  Landlord covenants and agrees to exonerate, indemnify, protect and save Tenant harmless from and against any and all claims, demands, expenses, losses, suits and damages as may be occasioned by reason of (i) any accident or matter occurring on or about the Shopping Center (excluding the Demised Premises), causing injury to persons or damage to property, unless such accident or other matter resulted from the gross negligence or willful misconduct of Tenant or Tenant's agents, contractors or employees, (ii) the failure of Landlord fully and faithfully to perform its obligations and observe the conditions of this Lease, and (iii) the negligence or willful misconduct of Landlord, its agents, contractors or employees.  Landlord shall maintain in full force and effect, at its own expense, subject to reimbursement as a Cost as herein provided, comprehensive general liability insurance (including a contractual liability and fire legal liability insurance endorsement) against claims for bodily injury, death or property damage in amounts not less than $1,000,000.00, and shall maintain in full force and effect "all risk" property damage insurance in an amount equal to the full replacement value of the building in which the Leased Premises are located, as such may change from time to time.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

## ARTICLE X - UTILITY CHARGES

Section 10.01 Utility Charges. Tenant shall be solely responsible for and promptly pay all charges for water, gas, heat, electricity, sewer and any other utility used upon or furnished to the Leased Premises from and after the Commencement Date. Where possible, Tenant shall contract directly with the utility suppliers. Utility deposits shall be the sole responsibility of Tenant. If Landlord shall elect to supply any of the foregoing utilities used upon or furnished to the Leased Premises, Tenant agrees to purchase and pay for the same within thirty (30) days of the presentation by Landlord to Tenant of bills therefor, at the applicable rates charged by the utility company serving the area with such services. The obligation of Tenant to pay for such utilities shall commence as of the date on which possession of the Leased Premises is delivered to Tenant without regard to when the Rent Commencement Date may be. Landlord will provide necessary utility hook-ups at the Landlord's expense.

## ARTICLE XI - ESTOPPEL LETTER, ATTORNMENT AND SUBORDINATION

Section 11.01 Estoppel Letter. Tenant agrees, within fifteen (15) business days after request therefor by Landlord, to execute in recordable form and deliver to Landlord a statement, in writing, certifying (a) that this Lease is in full force and effect, (b) the Commencement Date and the Rent Commencement Date, (c) that all rent is paid currently without any off-set or defense thereto, (d) the amount of rent, if any, paid in advance, (e) the amount of any security deposit held by Landlord hereunder, and (f) that there are no uncured defaults by Landlord, to Tenant's knowledge, or stating those claimed by Tenant; provided, that in fact such facts are accurate and ascertainable or stating any inaccuracies.

Section 11.02 Attornment. Tenant shall, in the event any proceedings are brought for the foreclosure of or in the event of exercise of the power of sale under any mortgage covering the Leased Premises, and provided that an SNDA (as hereinafter defined) shall have been executed with the mortgagee, attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as the Landlord under this Lease, all at the option of such purchaser.

Section 11.03 Subordination. Tenant agrees that this Lease shall, at the request of Landlord, be subordinate to all mortgages that may affect the Shopping Center and to any and all advances to be made thereunder, and to the interest thereon, and all renewals, replacements and extensions thereof; provided, that the holder(s) of such mortgages shall enter into a non-disturbance with Tenant in substantially the form of Exhibit E attached hereto (an "SNDA"). Tenant also agrees that any mortgagee may elect to have this Lease as a prior encumbrance to its mortgage or deed of trust, and in the event of such election and upon notification by such mortgagee or trustee to Tenant to such effect, this Lease shall be deemed prior in lien to said mortgage or deed of trust, whether this Lease is dated prior to or subsequent to the date of said mortgage or deed of trust. Tenant agrees that upon the request of Landlord or any mortgagee, it shall execute whatever instruments may be required to further the intent of this Section 11.03 and Section 11.02. Landlord and Tenant shall cooperate with each other in good faith, and with Landlord's current mortgage lender, to the end that an SNDA shall be executed simultaneously with the execution of this Lease.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Section 11.04  Non-Disturbance.  Provided this Lease shall be in full force and effect and provided further that there shall exist no Event of Default (which term includes the expiration of any applicable cure period) by Tenant hereunder, (i) the right of possession by Tenant to possess and quietly enjoy the Leased Premises and any or all of Tenant's rights under this Lease shall not be affected in any way or disturbed by any lender doing business with Landlord in the exercise of any of such lender's rights under any formal agreements between such lender and Landlord, and (ii) Tenant shall not be named as a party defendant to any foreclosure of any lien of any mortgage for the purpose of terminating this Lease, and Tenant shall not, by any such foreclosure, be in any other way foreclosed from its rights under this Lease.

## ARTICLE XII - ASSIGNMENT AND SUBLETTING

Section 12.01  Consent Required.  Tenant agrees not to assign or in any manner transfer this Lease or any estate or interest herein without the prior consent of Landlord, which consent shall not be unreasonably withheld, delayed or conditioned, and not to sublet the Leased Premises or any part or parts thereof or allow any one to come in with, through or under it without like consent, which consent shall not be unreasonably withheld, conditioned or delayed.   Consent by Landlord to one or more assignments of this Lease or to one or more sublettings of the Leased Premises shall not operate to exhaust Landlord's rights under this Article XII. Anything else in this Section 12.01 to the contrary notwithstanding, and provided Tenant is not in default hereunder beyond any applicable grace or cure period, Tenant shall have the right, without Landlord's prior written consent and without invoking Landlord's right to recapture, to assign this Lease or sublet the Leased Premises to: (i) any wholly owned subsidiary or to any parent corporation of Tenant; or (ii) any affiliate or entity under common control with Tenant or any affiliate or entity under common control with a parent or subsidiary of Tenant; or (iii) any entity of which Tenant, a Tenant affiliate, Tenant partner, Tenant subsidiary, Tenant parent, or entity under common control with Tenant is a shareholder or partner; or (iv) Tenant's successors; or (v) any entity which acquires all or substantially all of the assets or stock of Tenant, by merger, consolidation, acquisition or other business reorganization.  An "affiliate" shall mean any corporation or other business entity which controls, is controlled by, or is under common control with the entity in question.  If Tenant, with or without the previous consent of Landlord, does assign or in any manner transfers this Lease or any estate or interest herein, Tenant shall in no way be released from any of its obligations under this Lease.

Section 12.02  Recapture.  In lieu of consenting to any proposed assignment of this Lease or any proposed subletting of all or any part of the Leased Premises, as to which Landlord's consent is required pursuant to Section 12.01, Landlord may, within thirty (30) days after receipt of Tenant's request for Landlord's consent, terminate this Lease as to the portion of the Leased Premises covered by such proposed assignment or subletting effective no sooner than thirty (30) days after the date of Landlord's termination notice to Tenant, whereupon Tenant's rental and other obligations hereunder shall be equitably adjusted to account for such termination.

## ARTICLE XIII - WASTE

Section 13.01  Waste or Nuisance.  Tenant shall not commit or suffer to be committed any waste upon the Leased Premises or any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant in the Shopping Center.  Tenant shall not use, or permit to be used,

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

any medium that might constitute a nuisance, such as loud speakers, sound amplifiers, phonographs, radios, televisions, or any other sound-producing device which will carry sound outside the Leased Premises.

## ARTICLE XIV - SERVICE AREA

Section 14.01 Construction. Subject to the terms and conditions of this Lease, Tenant may construct a service area in the northeast corner of the Leased Premises to be used for in-vehicle telephone installations; provided, that the design and operation of such service area and the access thereto shall be architecturally and aesthetically consistent with the balance of the Shopping Center as to style and design, and subject to Landlord's approval, which approval shall not be unreasonably withheld, conditioned or delayed.

## ARTICLE XV - DESTRUCTION OF LEASED PREMISES

Section 15.01 Reconstruction of Damaged Premises. In the event the Leased Premises shall be partially or totally destroyed by fire or other casualty insured against under the insurance carried by Landlord pursuant to this Lease so as to become partially or totally untenantable, the damage to the Leased Premises shall be repaired promptly by Landlord, unless Landlord or Tenant shall elect to terminate this Lease as hereinafter provided, and a proportionate part of the Minimum Rent shall be abated until rebuilding is substantially complete. The obligation of Landlord hereunder shall be limited to reconstructing the Leased Premises in accordance with the construction plans for the Leased Premises and shall be further limited to the insurance proceeds paid to Landlord respecting the casualty in question. In no event shall Landlord be required to repair or replace Tenant's merchandise, trade fixtures, furnishings or equipment. If, during the last year of the term hereof, as the same may have been extended previously, more than twenty-five percent (25%) of the Leased Premises or of the leasable floor area of the building in which the Leased Premises are located shall be damaged or destroyed by fire or other casualty, then Landlord may by notice to Tenant given within 45 days after the date of the casualty, elect to terminate this Lease effective as of the date of the casualty. If, during the last year of the term hereof, as the same may have been extended previously, more than twenty-five percent (25%) of the Leased Premises shall be damaged or destroyed by fire or other casualty, Tenant may by notice to Landlord given within thirty (30) days after the date of the casualty, elect to terminate this Lease effective as of the date of the casualty. If Landlord is required to repair or rebuild the Leased Premises as herein provided, Tenant shall repair or replace its merchandise, trade fixtures, furnishings and equipment in a manner and to at least a condition equal to that prior to its damage or destruction.

Section 15.02 Waiver of Subrogation. Each party hereto does remise, release and discharge the other party hereto and any officer, agent, employee or representative of such party, of and from any liability whatsoever hereafter arising from damage to property caused by fire or other casualty for which insurance (permitting waiver of liability and containing a waiver of subrogation) is carried by the injured party at the time of such property damage to the extent of any recovery by the injured party under such insurance. Each party shall obtain such a waiver in all appropriate policies carried by it.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

## ARTICLE XVI - EMINENT DOMAIN

Section 16.01   Total Condemnation of Leased Premises.   If the whole of the Leased Premises shall be taken by any public authority under the power of eminent domain, or by deed in lieu thereof, the term of this Lease shall cease as of the day possession shall be taken by such public authority and all rent shall be paid up to that day with a proportionate refund by Landlord of any rent as may have been paid in advance for a period subsequent to the date of taking.

Section 16.02   Partial Condemnation.   If more than twenty-five percent (25%) of the Leased Premises or more than twenty-five percent (25%) of the common areas shall be taken under eminent domain, or by deed in lieu thereof, Landlord and Tenant shall each have the right to terminate this Lease and declare the same null and void, by notice of such intention to the other party within thirty (30) days after such taking.   In the event neither party exercises said right of termination, the term shall cease only as to the part of the Leased Premises so taken as of the day of possession of such public authority and Tenant shall pay rent respecting such part up to such day, with appropriate refund by Landlord of any rent as may have been paid in advance for a period subsequent to the date of taking, and thereafter all the terms herein provided shall continue in effect and Landlord shall, at its own cost and expense, make all necessary repairs or alterations to the basic building as installed by Landlord, so as to constitute the remaining Leased Premises a complete architectural unit, limited, however, as to cost, to the amount of the award received by Landlord on account of such taking.

Section 16.03   Awards.   With respect to any taking by a public authority under the power of eminent domain, or by deed in lieu thereof, Tenant shall be entitled to bring a claim against the condemning authority for a separate award to compensate Tenant for damage to its trade fixtures and inventory, Tenant's business relocation costs and the like; provided, that in no event shall Tenant be entitled to compensation for the loss of its leasehold.

## ARTICLE XVII - DEFAULT BY TENANT

Section 17.01   Default.   Tenant shall be in default hereunder if (a) Tenant fails to pay, when due, Minimum Rent or any other sums due under this Lease and such default shall continue for more than ten (10) days after notice from Landlord to Tenant; or (b) Tenant fails to observe and perform any of the other terms, covenants and/or conditions of this Lease and such default shall continue for more than twenty (20) days after notice from Landlord to Tenant; or (c) the Leased Premises shall be abandoned, deserted or vacated, or if Tenant fails to take possession of the Leased Premises and initially open for business to the public as required hereunder within sixty (60) days after the Commencement Date.   If the nature of a default under Section 17.01(b) is such that it cannot reasonably be cured within the aforesaid cure period, and work thereon shall be commenced within said period and diligently prosecuted to completion, then Landlord's rights under Section 17.02 with respect to such default shall be inapplicable.   In any such event and in addition to Landlord's remedies set forth in Section 17.02, Landlord may, in accordance with applicable law, enter the Leased Premises; provided, that Tenant may not be evicted nor may Landlord reenter or repossess the Leased Premises or remove Tenant's property therefrom without Landlord first having obtained the appropriate order from a court of competent jurisdiction.   All such property shall be placed in storage at Tenant's cost and expense.

Section 17.02  <u>Landlord's Rights Upon Default</u>.

A.    In the event of any default by Tenant, Landlord may (1) cure Tenant's default at Tenant's cost and expense, and/or (2) reenter the Leased Premises and remove all persons and all or any property therefrom, by any suitable action or proceeding at law, without being liable for any prosecution therefor or damages therefrom, and repossess and enjoy the Leased Premises, with all additions, alterations and improvements, and Landlord may, at its option, repair, alter, remodel and/or change the character of the Leased Premises as it may deem fit, and/or (3) at any time relet the Leased Premises or any part or parts thereof, as the agent of Tenant or in Landlord's own right, and/or (4) terminate this Lease upon not less than three (3) days notice to Tenant. The exercise by Landlord of any right granted in this <u>Section 17.02</u> shall not relieve Tenant from the obligation to make all rental payments, and to fulfill all other covenants required by this Lease, at the time and in the manner provided herein, and if Landlord so desires all current and future rent and other monetary obligations due hereunder (after deducting the fair rental value of the Leased Premises for the remaining term of this Lease), discounted to present value using a 5% discount rate, shall become immediately due and payable, as liquidated damages. Alternatively, at Landlord's election, Tenant, throughout the remaining term hereof, shall pay Landlord, no later than the last day of each month during the term, the then current excess, if any, of the sum of the unpaid rentals and costs to Landlord resulting from such default by Tenant over the proceeds, if any, received by Landlord from any reletting of the Leased Premises, but Landlord shall have no liability to account to Tenant for any excess. If Landlord attempts to relet the Leased Premises, Landlord shall be the sole judge as to whether or not a proposed tenant is suitable and acceptable and may lease other vacant space within the Shopping Center prior to leasing the Leased Premises.

B.    In the event of a breach by Landlord or Tenant of any of the covenants or provisions hereof, Landlord or Tenant, as the case may be, shall have, in addition to any other remedies which it may have the right to seek to invoke, any remedy allowed at law or in equity to enforce its rights.

Section 17.03  <u>Non-Waiver Provisions</u>.

A.    The failure of Landlord or Tenant to insist upon a strict performance of any of the terms, conditions or covenants herein shall not be deemed to be a waiver of any rights or remedies that it may have and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained, except as may be expressly waived in writing.

B.    The maintenance of any action or proceeding to recover possession of the Leased Premises, or any installment or installments of rent or any other monies that may be due or become due from Tenant to Landlord, shall not preclude Landlord from thereafter instituting and maintaining subsequent actions or proceedings for the recovery of possession of the Leased Premises or of any other monies that may be due or become due from Tenant. Any entry or re-entry by Landlord shall not be deemed to absolve or discharge Tenant from liability hereunder.

Section 17.04  <u>Expenses</u>. If Landlord or Tenant shall at any time be in default hereunder, and if the other party shall deem it necessary to engage attorneys to enforce its rights hereunder, the determination of such necessity to be in the sole discretion of the other party, the defaulting party

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

will reimburse the other party for the reasonable expenses incurred thereby, including but not limited to court costs and reasonable attorney's fees, both at trial and on appeal.

Section 17.05 <u>Right to Cure</u>. If either party defaults in the making of any payment or in the doing of any act herein required to be made or done by such party, and such default continues for a period of three (3) days after notice in the event of an emergency, or twenty (20) days after notice in any other event, then the other party may, but shall not be required to, make such payment or do such act, and charge the amount of such party's expense to the defaulting party. Such payment shall be payable with the next monthly installment of rent in the event of payments due to Landlord hereunder, and shall be deductible from the next monthly installment of rent due hereunder if such payment is due to Tenant.

## ARTICLE XVIII - ACCESS BY LANDLORD

Section 18.01 <u>Right of Entry</u>. Upon reasonable prior notice to Tenant and, if Tenant shall request, accompanied by a representative of Tenant, Landlord or Landlord's agent shall have the right to enter the Leased Premises at all reasonable times to examine the same and to show them to prospective purchasers or mortgagees respecting the Shopping Center, and to make such repairs, alterations, improvements or additions as Landlord may reasonably deem necessary or desirable (without unreasonably disrupting Tenant's business) and Landlord shall be allowed to take all material into and upon the Leased Premises that may be required therefor without the same constituting an eviction of Tenant in whole or in part, and the rent reserved shall in no way abate while said repairs, alterations, improvements or additions are being made, by reason of loss or interruption of business of Tenant, or otherwise, so long as Landlord uses reasonable efforts to minimize disruption to Tenant's business, access, visibility and operations. During the eight (8) months prior to the expiration of the term of this Lease, Landlord may exhibit the Leased Premises to prospective tenants and place upon the Leased Premises the usual notice "To Let" or "For Rent", which notices Tenant shall permit to remain thereon without molestation.

## ARTICLE XIX - TENANT'S PROPERTY

Section 19.01 <u>Loss and Damage</u>. Landlord shall not be responsible or liable to Tenant for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying adjoining premises or any part of the premises adjacent to or connected with the Leased Premises or any part of the building of which the Leased Premises are a part, or for any loss or damage resulting to Tenant or its property from bursting, stoppage or leakage of water, gas, sewer or steam pipes or for any damage of property within the Leased Premises from any cause whatsoever, except to the extent caused by the negligence or willful misconduct of Landlord, its agents, contractors or employees.

Section 19.02 <u>Notice by Tenant</u>. Tenant shall give reasonably prompt notice to Landlord in case of fire or accidents in the Leased Premises or, if Tenant becomes aware thereof, in the building of which the Leased Premises are a part, or in the case of defects in the Leased Premises or in any fixtures or equipment therein; however, Tenant shall have no liability for failure to notify.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

ARTICLE XX - HOLDING OVER AND SURRENDER OF LEASED PREMISES

Section 20.01  Holding Over.  Any holding over by Tenant or anyone acting through Tenant after the expiration of the term with the consent of the Landlord, shall be construed to be a tenancy from month to month (at 140% of last adjusted monthly Minimum Rent herein specified) and shall otherwise be on the same terms and conditions herein specified so far as applicable.

Section 20.02  Surrender of Premises.

A.    At the expiration of the tenancy hereby created, Tenant shall surrender the Leased Premises in good condition, reasonable wear and tear excepted, and damage by unavoidable casualty excepted, and Tenant shall surrender all keys for the Leased Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks, safes and vaults, if any, in the Leased Premises.  Tenant's obligation to observe and perform this covenant shall survive the expiration or other termination of the term.  If Tenant shall default in so surrendering the Leased Premises, Tenant's occupancy, subsequent to such expiration, shall be deemed to be that of a tenancy at will and in no event shall it be deemed from month to month or from year to year, and it shall be subject to all the terms, covenants and conditions of this Lease applicable thereto, except that Minimum Rent shall be 1.4 times the amount payable in the last month of the term, and no extension or renewal of this Lease shall be deemed to have occurred by such holding over.

B.    Prior to the expiration or sooner termination of this Lease, Tenant shall remove any and all trade fixtures, inventory and other unattached items which Tenant may have installed, stored or left in the Leased Premises or elsewhere in the Shopping Center, including but not limited to counters, shelving, showcases, chairs and unattached movable machinery purchased or provided by Tenant and which are susceptible to being moved without damage to the building.  Tenant shall repair any damage to the Leased Premises caused by its removal of such fixtures and movables.  In the event Tenant does not make such repairs, Tenant shall be liable for and agrees to pay Landlord's costs and expenses in making such repairs, together with a sum equal to ten percent (10%) of such costs and expenses to cover Landlord's overhead in making such repairs for Tenant.  Tenant shall not remove any plumbing or electrical fixtures or equipment, heating or air conditioning equipment, floor coverings (including, but not limited, to wall to wall carpeting), walls or ceilings, all of which shall be deemed to constitute a part of the reversionary interest of Landlord, nor shall Tenant remove any fixtures or machinery that were furnished or paid for by Landlord.  The Leased Premises shall be left in a broom-clean condition.  If Tenant shall fail to remove its trade fixtures or other property as provided for in this Section 20.02, after seven (7) days notice to Tenant, such fixtures and other property not removed by Tenant shall be deemed abandoned by Tenant and at the option of Landlord shall become the property of Landlord, or at Landlord's option may be removed by Landlord at Tenant's expense plus ten percent (10%) as hereinabove provided, or placed in storage at Tenant's expense, or sold or otherwise disposed of, in which event the proceeds of such sale or other disposition shall belong to Landlord.  This Section 20.02 shall survive the expiration or termination of the term.

Section 20.03  Successors.  All rights and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the several respective heirs, legal representatives,

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

successors and assigns of the parties, as the case may be. If there shall be more than one Tenant, they shall all be bound jointly and severally by the terms, covenants and agreements herein. No rights, however, shall inure to the benefit of any assignee of Tenant unless the assignment to such assignee has been approved by Landlord if required by Section 12.01.

## ARTICLE XXI - RULES AND REGULATIONS

Section 21.01  Rules and Regulations. Tenant shall comply with and observe all reasonable rules and regulations established by Landlord from time to time, so long as they apply uniformly to all tenants of the Shopping Center. Landlord shall provide Tenant with copies of any new reasonable rules and regulations, or modifications to the same, at least thirty (30) days prior to the effective date of such rules and regulations. Tenant's failure to keep and observe said rules and regulations shall constitute a breach of this Lease in the same manner as if the same were contained herein as covenants.

## ARTICLE XXII - QUIET ENJOYMENT

Section 22.01  Landlord's Covenant. Upon payment by Tenant of the rents herein provided, and upon the observance and performance of all the covenants, terms and conditions on Tenant's part to be observed and performed, Tenant shall peaceably and quietly hold and enjoy the Leased Premises for the term without hindrance or interruption by Landlord or any other person or persons claiming by, through or under Landlord, subject, nevertheless, to the terms and conditions of this Lease, and (subject to Article XI) any mortgages to which this Lease may be subordinate.

## ARTICLE XXIII - RENEWAL OPTIONS

Section 23.01  Renewal Options. Landlord hereby grants to Tenant options to continue leasing the Leased Premises for two periods of sixty (60) months each, such extensions of the term to commence on the day following the last day of the initial term of this Lease or of the preceding extension period, as the case may be. Tenant shall exercise each renewal option by giving to Landlord, at least eight (8) months prior to the then scheduled expiration of this Lease, notice that Tenant intends to exercise said renewal option; provided, that no such option shall be exercisable while Tenant is in default hereunder beyond any period of grace applicable thereto. Upon Tenant's failure timely to give such notice, all remaining renewal options shall immediately cease and be thereafter null and void. During any renewal period, the terms and provisions of this Lease shall remain unchanged; provided, that the Minimum Rent during such renewal periods shall be as follows:

First renewal period:     $142,830.00/annum ($11,902.50/month).

Second renewal period:    $164,151.00/annum ($13,679.25/month).

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

## ARTICLE XXIV - ENVIRONMENTAL MATTERS

Section 24.01  Definitions.

A.      The term "Environmental Law" shall mean any federal, state or local, statute, act, law, ordinance, rule, regulation or order pertaining to the environment whether now or hereafter enacted.

B.      "Hazardous Substance" shall mean any hazardous, toxic or regulated substance within the meaning of any Environmental Law or any rule, regulation or order issued pursuant to any Environmental Law.

C.      "Enforcement Agency" shall mean the Environmental Protection Agency or any state, county, municipal or other agency having authority to enforce any Environmental Law.

Section 24.02  Landlord's Responsibilities.

A.      Landlord certifies to Tenant that at the date of this Lease the Leased Premises contains no Hazardous Substance, other than such as are being used in compliance with applicable Environmental Laws. Landlord represents: that any handling, transportation, storage, treatment or use of Hazardous Substances that may have occurred at the Shopping Center or Leased Premises prior to the Commencement Date have been in compliance with Environmental Laws; that no leak, spill, release, discharge, emission or disposal of any Hazardous Substance has occurred at the Shopping Center or Leased Premises prior to the Commencement Date; that the soil and groundwater on or under the Shopping Center or Leased Premises are free of any Hazardous Substance; and that as of the Commencement Date the Shopping Center and the Leased Premises do not contain any asbestos, abnormally high quantities of radon gas, or PCBs.

B.      If any Environmental Law is promulgated at any time after the date of this Lease for the removal, abatement or containment of a Hazardous Substance in the Leased Premises which existed at the date of this Lease, or for which Landlord (as opposed to Tenant) is responsible hereunder, and, in the reasonable judgment of Landlord, it is hazardous for the Tenant to remain in the Leased Premises during such removal, abatement or containment of the Hazardous Substance, Tenant shall vacate the Leased Premises or that portion of the Leased Premises that is hazardous and, provided that such condition did not result from Tenant's acts, omissions or operations, the rent shall be abated proportionately for the period of time during which Tenant's use of such portion of the Leased Premises has been interrupted.

Section 24.03  Tenant's Responsibilities.

A.      All alterations made in the Leased Premises by Tenant or anyone claiming through Tenant shall be in accordance with and shall comply with all Environmental Laws and the requirements of all Enforcement Agencies.

B.      Tenant shall not intentionally or unintentionally use, store, handle, spill or discharge any Hazardous Substance at, about or in the Leased Premises, other than in compliance with all

H:\re\Willner\pier1\docs\leaseverizon031102.doc                    22

Environmental Laws. Tenant shall not use the Leased Premises in any manner which will cause the Leased Premises to have a standard industrial classification ("SIC") which is covered by any Environmental Law.

C.      Within thirty (30) days after request therefor, Tenant shall execute and deliver any document reasonably required in order for Landlord or Tenant to comply with any Environmental Law.

D.      Tenant shall promptly deliver to Landlord copies of all notices made by it to, or received by it from, any Enforcement Agency or from the United States Occupational Safety and Health Administration concerning environmental matters or Hazardous Substances at the Leased Premises.

E.      Tenant shall indemnify, defend and hold Landlord harmless of and from any and all claims arising by reason of any violation by Tenant of the provisions of this Article XXIV and this indemnity shall survive the expiration or other termination of this Lease.

F.      Prior to the Rent Commencement Date, Tenant may cause a Phase 1 Environmental Site Assessment to be performed at the Shopping Center, at Tenant's sole cost and expense.

## ARTICLE XXV - MISCELLANEOUS

Section 25.01  Waiver.  One or more waivers by Landlord or Tenant of a breach of any covenant or condition shall not be construed as a waiver of a subsequent similar breach. No breach of a covenant or condition of this Lease shall be deemed to have been waived by Landlord or Tenant, unless such waiver is in writing and is signed by the waiving party.

Section 25.02  Entire Agreement.  This Lease and the Exhibits attached hereto and forming a part hereof, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Leased Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth. No alterations, amendments, changes or additions to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by each party.

Section 25.03  Interpretation and Use of Pronouns.  Nothing contained herein shall be deemed or construed by the parties hereto, nor by any third party, as creating the relationship of principal and agent or of partnership or of joint venture between the parties hereto, it being understood and agreed that neither the method of computation of rent, nor any other provisions contained herein, nor acts of the parties hereunder, shall be deemed to create any relationship between the parties hereto other than the relationship of landlord and tenant. Whenever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders.

Section 25.04  Delays.  In the event that either party shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, despite reasonable efforts, failure of power, restrictive

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

governmental laws or regulations, riots, Acts of God, unforseen or unusual weather conditions, insurrection, war or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under this Lease, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay. The party entitled to such extension hereunder shall give notice as soon as possible to the other party of its claim of right to such extension and the reason(s) therefor. Notwithstanding the foregoing, the provisions of this Section 25.04 shall not operate to excuse a party from prompt payment of rent or any other payments required by this Lease.

Section 25.05  Notices.  Any notice, demand, request or other communication which may be or is required to be given under this Lease shall be given by United States certified mail, return receipt requested, postage prepaid, or recognized national courier service, and shall be addressed (a) if to Landlord, at the address first hereinabove given or at such other address as Landlord may designate by notice, and (b) if to Tenant, at the address set forth above to the attention of the Director of Real Estate, with a duplicate copy to the same address to the attention of the Office of the Area General Counsel, or at such other address as Tenant shall designate by notice.  All such communications shall be deemed given when deposited, properly addressed, in the United States mail, or with the courier, as herein provided, regardless of whether the same is undelivered or the addressee should refuse to accept delivery thereof for any reason.

Section 25.06  Captions and Section Numbers.  The captions, section numbers and article numbers appearing in this Lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such sections or articles nor in any way affect this Lease.

Section 25.07  Broker's Commission.  Each of the parties represents and warrants that there are no claims for brokerage commissions or finder's fees in connection with the execution of this Lease, other than those payable by Landlord to Metro Commercial, Inc. and/or Legend Properties, pursuant to a separate agreement, and against which Landlord shall indemnify Tenant, and each of the parties agrees to indemnify the other against, and hold it harmless from, all liabilities arising from any such claims made through it (including, without limitation, the cost of reasonable counsel fees in connection therewith).

Section 25.08  Recording.   Tenant shall not record this Lease without the consent of Landlord.

Section 25.09  Landlord's Use of Common Areas.  Landlord reserves the right, from time to time, to utilize portions of the common areas for carnival type shows, rides and entertainment, outdoor shows, displays, automobile and other product shows, or such other uses which in Landlord's reasonable judgment tend to attract the public.  Further, Landlord reserves the right to utilize the lighting standards and other areas in the parking lot for advertising purposes.

Section 25.10  Transfer of Landlord's Interest.  In the event of any transfer of Landlord's interest in the Leased Premises, the transferor shall be automatically relieved of any and all obligations and liabilities on the part of the Landlord accruing from and after the date of such transfer, which shall be deemed assumed by the transferee.

Section 25.11 <u>Interest on Past Due Obligations</u>. Any amount due from Tenant to Landlord hereunder which is not paid when due shall bear interest at rate of eleven percent (11%) per annum from the due date until paid, but the payment of such interest shall not excuse or cure any default by Tenant under this Lease.

Section 25.12 <u>Liability of Landlord</u>. If Landlord shall fail to perform any covenant, term or condition of this Lease upon Landlord's part to be performed, and if, as a consequence of such default, Tenant shall recover a money judgment against Landlord, such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment and levied thereon against the right, title and interest of Landlord in the Shopping Center and out of rents and other income from such property receivable by Landlord, and neither Landlord nor any of its shareholders and/or partners shall be personally liable for any deficiency.

Section 25.13 <u>Accord and Satisfaction</u>. No payment by Tenant or receipt by Landlord of a lesser amount than the rents herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Lease provided.

Section 25.14 <u>Laws of the State Where the Premises are Situated</u>. This Lease shall be governed by, and construed in accordance with, the laws of the State wherein the leased premises are situated. If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease shall not be affected thereby and each provision of the Lease shall be valid and enforceable to the fullest extent permitted by the law.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the day and year first written above.

"LANDLORD"

CMW INVESTMENTS, LTD.

By:     CMW Development, Inc., its general partner

     By: _____
         President

"TENANT"

CELLCO PARTNERSHIP d/b/a Verizon Wireless

By: _____
    Title: NE Area President

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

EXHIBIT A – Page 1 of 2



VERICON WIRELESS

PHIL / KING OF PRUSSIA

STE PLAN

ALLENDALE ROAD

\* Not intended to be a complete
   description or representation
   of site.  Actual dimension is
   subject to change.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

EXHIBIT A – Page   2 of 2



Cage area

Approximate location of service
corridor and entry door. ( To be
constructed in accordance with
local building codes )

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

EXHIBIT B

INITIAL IMPROVEMENTS

1.      Description of Improvements.  Tenant shall cause to be prepared by a space planner, architect and/or engineer approved by Landlord, in Landlord's reasonable discretion, all plans, specifications, architectural and mechanical drawings and bid documents (the "Plans") required to complete any structural alterations to the Leased Premises included as part of Tenant's initial improvements to the Leased Premises, to be approved by Landlord, which approval shall not be unreasonably withheld, conditioned or delayed (the "Initial Improvements").  The Plans shall be prepared at Tenant's cost. The Plans shall be consistent with the architectural, mechanical, electrical, plumbing and structural requirements of the building in which the Leased Premises are located.

2.      Completion of Initial Improvements.  Tenant shall use commercially reasonable efforts to cause the Initial Improvements to be completed in a timely manner in accordance with the Plans. The Initial Improvements shall be constructed by Tenant at Tenant's own risk, cost and expense, and shall be designed and completed in accordance with all applicable governmental requirements and in a good and workmanlike manner.

3.      Access to Premises.   Upon reasonable prior notice, Tenant shall afford Landlord's representatives access to the Leased Premises, at reasonable times and, if Tenant so requests, accompanied by Tenant's representative, for the purposes of inspecting the Initial Improvements.

4.      Acceptance by Tenant Deemed Approval.  On the Commencement Date, it shall be presumed that the Leased Premises are satisfactory and in accordance with, and meeting the requirements of, this Lease, except for latent defects and defects in the HVAC system which cannot be currently tested because of seasonality.  Tenant acknowledges that it is leasing the Leased Premises from Landlord "as is, where is" as of the Lease Commencement Date.

H:\re\Willner\pier1\docs\leaseverizon031102.doc

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM Fee = $270.00



VERISON BLDG. SIGNAGE AREA

EXHIBIT C

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

EXHIBIT C-4
LESSEE'S PROPOSED SIGNAGE

INTERNALLY ILLUMINATED
INDIVIDUAL CHANNEL
LETTERS CENTERED
VERTICALLY ON BUILDING
SIGN BAND.

COLORS OF SIGN FACE
AND OPAQUE RETURNS
PER VERIZON WIRELESS
LOGO STANDARDS.

SIGN SHALL BE UL
APPROVED.

SIZE TBD PER ZONING OR TENANT CRITERIA

VERIZON WIRELESS STANDARD LOGO
ON BUILDING SIGN BAND



Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

EXHIBIT D



*Location of Verizon Pylon Sign*

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

EXHIBIT E

## SUBORDINATION AGREEMENT
and
## ESTOPPEL, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
Loan 752631

**Tenant's Trade Name:** Verizon Wireless

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR LEASEHOLD ESTATE IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF THE MORTGAGE (DEFINED BELOW).**

This SUBORDINATION AGREEMENT AND ESTOPPEL, NON-DISTURBANCE AND ATTORNMENT AGREEMENT ("Agreement") is made as of _____, 2001 by and between CELLCO PARTNERSHIP (d/b/a) Verizon Wireless, a Delaware Partnership ("Tenant") and LASALLE BANK NATIONAL ASSOCIATION, as trustee for MORGAN STANLEY DEAN WITTER CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2000 LIFE2 ("Lender"), with reference to the following facts and intentions of the parties:

## RECITALS

A. CMW INVESTMENTS, LTD., a Pennsylvania limited partnership ("Owner") is the owner of the land and improvements commonly known as Courtside Square and more specifically described in Exhibit A attached hereto ("Property") and the owner of the Landlord's interest in the lease identified in Recital B below ("Lease").

B. Tenant is the owner of the tenant's interest in that lease dated _____, 2001 executed by Owner, as landlord, and Tenant, as tenant (Said lease is collectively referred to herein as the "Lease").

C. Owner is indebted to Lender under a promissory note in the original principal amount of $3,500,000.00, which note is secured by, among other things, a mortgage, deed of trust, trust indenture or deed to secure debt encumbering the Property ("Mortgage"), dated May 25, 2000 and recorded May 30, 2000 in the Official Records of the County of Montgomery, State of Pennsylvania ("Mortgage").

D. As a condition to the Lease, Tenant has requested that Lender make certain agreements with Tenant, as set forth below, and Lender is willing to make such agreements with Tenant if Tenant furnishes certain assurances to, and makes certain agreements with, Lender, as set forth below.

THEREFORE, The parties agree as follows:

1. **SUBORDINATION.**

   1.1 **Prior Lien.** The Mortgage, and any modifications, renewals or extensions thereof, shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to the Lease.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

1.2     **Entire Agreement**. This Agreement shall be the whole agreement and only agreement with regard to the subordination of the Lease to the lien or charge of the Mortgage, and shall supersede and cancel, but only insofar as would affect the priority between the Mortgage and the Lease, any prior agreements as to such subordination, including, without limitation, those provisions, if any, contained in the Lease which provide for the subordination of the Lease to a deed or deeds of trust, a mortgage or mortgages, a deed or deeds to secure debt or a trust indenture or trust indentures.

1.3     **Disbursements**. Lender, in making disbursements pursuant to the Note, the Mortgage or any loan agreements with respect to the Property, is under no obligation or duty to, nor has Lender represented that it will, see to the application of such proceeds by the person or persons to whom Lender disburses such proceeds, and any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat this agreement to subordinate in whole or in part.

1.4     **Subordination**. Tenant intentionally and unconditionally waives, relinquishes and subordinates all of Tenant's right, title and interest in and to the Property, to the lien of the Mortgage.

2.     **NON-DISTURBANCE AND ATTORNMENT**.

2.1     **Non-Disturbance**. Notwithstanding anything to the contrary contained in the Lease, so long as there shall exist no breach, default or event of default (beyond any period given to Tenant in the Lease to cure such default) on the part of Tenant under the Lease at the time of any foreclosure of the Mortgage, Lender agrees that the leasehold interest of Tenant under the Lease shall not be terminated by reason of such foreclosure, but rather the Lease shall continue in full force and effect and Lender shall recognize and accept Tenant as tenant under the Lease subject to the provisions of the Lease. Nor shall tenant be named as a defendant in any foreclosure or other action to recover possession of the premises.

2.2     **Attornment**. Notwithstanding anything to the contrary contained in the Lease, should title to the leased premises and the landlord's interest in the Lease be transferred to Lender or any other person or entity ("New Owner") by, or in-lieu of judicial or non-judicial foreclosure of the Mortgage, Tenant agrees, for the benefit of New Owner and effective immediately and automatically upon the occurrence of any such transfer, that: (a) Tenant shall pay to New Owner all rental payments required to be made by Tenant pursuant to the terms of the Lease for the remainder of the Lease term; (b) Tenant shall be bound to New Owner in accordance with all of the provisions of the Lease for the remainder of the Lease term; (c) Tenant hereby attorns to New Owner as its landlord, such attornment to be effective and self-operative without the execution of any further instrument; (d) New Owner shall not be liable for any default of any prior landlord under the Lease, including, without limitation, Owner, except where such default is continuing at the time New Owner acquires title to the leased premises and New Owner fails to cure same after receiving notice thereof; (e) New Owner shall not be subject to any offsets or defenses which Tenant may have against any prior landlord under the Lease, including, without limitation, Owner, except where such offsets or defenses arise out of a default of the prior landlord which is continuing at the time New Owner acquires title to the leased premises and New Owner fails to cure same after receiving notice thereof; and (f) New Owner shall not be liable for any obligations of landlord first arising under the Lease following any subsequent transfer of the title to the leased premises by New Owner provided such obligations shall be assumed by New Owner's transferee.

2.3     **Amendment**. Notwithstanding anything to the contrary in Sections 2.1 or 2.2 above, Lender and Tenant agree that, in the event title to the Property and the landlord's interest in the Lease are

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

transferred to a New Owner by or in lieu of judicial or nonjudicial foreclosure of the Mortgage, the Lease shall be automatically deemed amended in the following respects only without the need for any further action by New Owner or Tenant:

N/A

3. **ESTOPPEL.** Tenant warrants and represents to Lender, as of the date hereof, that:

3.1 **Lease Effective.** The Lease has been duly executed and delivered by Tenant and, subject to the terms and conditions thereof, the Lease is in full force and effect, the obligations of Tenant thereunder are valid and binding, and there have been no modifications or additions to the Lease, written or oral, other than those, if any, which are referenced above in Recital B.

3.2 **No Default.** To the best of Tenant's knowledge as of the date hereof: (a) there exists no breach, default, or event or condition which, with the giving of notice or the passage of time or both, would constitute a breach or default under the Lease either by Tenant or Owner; and (b) Tenant has no existing claims, defenses or offsets against rental due or to become due under the Lease.

3.3 **Entire Agreement.** The Lease constitutes the entire agreement between Owner and Tenant with respect to the Property, and Tenant claims no rights of any kind whatsoever with respect to the Property, other than as set forth in the Lease.

3.4 **Minimum Rent.** The annual minimum rent under the Lease is $124,200.00, subject to any escalation, percentage rent and/or common area maintenance charges provided in the Lease, if any

3.5 **Rental Payment Commencement Date:** The rents stated in Section 3.4 above will begin or have begun on the Rent Commencement Date.

3.6 **Rentable area.** The rentable area of the leased premises is 4,140 square feet.

3.7 **Commencement Date.** To be determined as provided in the Lease.

3.8 **Expiration Date.** To be determined as provided in the Lease.

3.9 **No Deposits or Prepaid Rent.** No deposits or prepayments of rent have been made in connection with         the         Lease,         except         as         follows: None.

3.10 **No Other Assignment.** To its knowledge as of the date hereof, Tenant has received no notice, and is not otherwise aware of, any other assignment of the landlord's interest in the Lease.

3.11 **No Purchase Option or Refusal Rights.** Tenant does not have any option or preferential right to purchase     all     or     any     part     of     the     Property,     except     as     follows: None.

4. INTENTIONALLY OMITTED

5. INTENTIONALLY OMITTED

6. **MISCELLANEOUS.**

6.1 **Heirs, Successors and Assigns.** The covenants herein shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the parties hereto. Whenever necessary or appropriate to give logical

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

meaning to a provision of this Agreement, the term "Owner" shall be deemed to mean the then current owner of the Property and the landlord's interest in the Lease.

6.2     Addresses; Request for Notice.  All notices and other communications that are required or permitted to be given to a party under this Agreement shall be in writing and shall be sent to such party, either by personal delivery, by overnight delivery service, by certified first class mail, return receipt requested, or by facsimile transmission, to the address or facsimile number below.  All such notices and communications shall be effective upon receipt of such delivery or facsimile transmission.  The addresses and facsimile numbers of the parties shall be:

| Tenant: | Lender: |
|---|---|
| CELLCO PARTNERSHIP | LASALLE BANK NATIONAL.. |
| d/b/a Verizon Wireless | C/0 Principal Capital Management, LLC |
| 100 Southgate Parkway | 801 Grand Avenue |
| Morristown, NJ 07960 | Des Moines, IA 50392-1450 |
| Attn:  Director of Real Estate | Attn: Commercial Real Estate Loan |
| FAX No.: (973) 656-7767 | Servicing, Loan 752631 |
| with a copy to: | FAX No.:515-248-8090 |
| Attn:  Office of the Area | |
|    General Counsel | |
| at the above address | |

provided, however, any party shall have the right to change its address for notice hereunder by the giving of written notice thereof to the other party in the manner set forth in this Agreement.

6.3     Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute and be construed as one and the same instrument.

6.4     Section Headings.  Section headings in this Agreement are for convenience only and are not to be construed as part of this Agreement or in any way limiting or applying the provisions hereof.

6.5     Attorneys' Fees.  If any legal action, suit or proceeding is commenced between Tenant and Lender regarding their respective rights and obligations under this Agreement, the prevailing party shall be entitled to recover, in addition to damages or other relief, costs and expenses, reasonable attorneys' fees and court costs (including, without limitation, expert witness fees).  As used herein, the term "prevailing party" shall mean the party which obtains the principal relief it has sought, whether by compromise, settlement or judgment.  If the party which commenced or instituted the action, suit or proceeding shall dismiss or discontinue it without the concurrence of the other party, such other party shall be deemed the prevailing party.

7.     INCORPORATION.  Exhibit A, the Owner's Consent are attached hereto and incorporated herein by this reference.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

"LENDER"

**LENDER:**

LASALLE BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR MORGAN STANLEY DEAN
WITTER CAPITAL I INC., COMMERCIAL
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2000-LIFE2"

By: PRINCIPAL CAPITAL MANAGEMENT, LLC, a
Delaware limited liability company,
in its capacity as Primary Servicer its authorized
signatory

By_____
Name/Title:

By_____
Name/Title:

"TENANT"

CELLCO PARTNERSHIP

By: _____

Its: _____

Rick Conrad
NE Area President

IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS AGREEMENT,
THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT HERETO.

ALL SIGNATURES MUST BE ACKNOWLEDGED.

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

## OWNER'S CONSENT

The undersigned, which owns or is about to acquire the Property and the landlord's interest in the Lease, hereby consents to the execution of the foregoing SUBORDINATION AGREEMENT AND ESTOPPEL, NON-DISTURBANCE AND ATTORNMENT AGREEMENT, and to implementation of the agreements and transactions provided for therein.  Owner to waive its interest in any payments made by Tenant to Lender after owner default and notice from Lender to Tenant.

"OWNER"

CMW INVESTMENTS, LTD., a Pennsylvania limited partnership

By:  CMW DEVELOPMENT, INC, a Pennsylvania corporation, its general partner

BY _____
   Michael J. Willner, President

6

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

EXHIBIT "B"

EXHIBIT "B"

{00467564;1}

Case# 2016-07487-0 Docketed at Montgomery County Prothonotary on 04/14/2016 4:13 PM, Fee = $270.00

FOURTH AMENDMENT AND EXTENSION TO LEASE AGREEMENT

This Fourth Amendment and Extension to Lease Agreement ("Agreement") entered into on August 5(, 2011 by and between Cellco Partnership d/b/a Verizon Wireless, with offices at 100 Southgate Parkway, Morristown, NJ 07960 ("Tenant"), and CMW Investments, Ltd. with offices at 150 Allendale Road, King of Prussia, PA 19406 ("Landlord").

WITNESSETH:

WHEREAS, Landlord and Tenant entered into a Lease Agreement, dated as of April 12, 2002 (the "Lease"), for certain premises located at Courtside Square Shopping Center, Allendale Road, King of Prussia, Pennsylvania and more fully described in Exhibit A to the Lease, (the "Leased Premises"); and

WHEREAS, Landlord and Tenant entered into a First Amendment and Extension to Lease Agreement, dated March 3, 2007; and

WHEREAS, Landlord and Tenant entered into a Second Amendment and Extension to Lease Agreement, dated October 22, 2007; and

WHEREAS, Landlord and Tenant entered into a Third Amendment and Extension to Lease Agreement, dated July 22, 2009; and

WHEREAS, Landlord and Tenant desire to modify certain terms of the Lease.

NOW, THEREFORE, in consideration of the covenants herein contained and of other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

1. Except as otherwise expressly set forth herein, any reference to a Section shall mean the sections as set forth in the Lease.

2. All capitalized terms referred to herein shall have the same meanings as in the Lease unless expressly provided otherwise herein

3. In Section 1.02(B) ("Commencement and Ending Day of Term; Rent Commencement Date") and Section 2.01(A) ("Minimum Rent"), the following paragraph is hereby added at the end thereof: